1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   DEREK TATE,                              Case No.: 1:22-cv-00624-SKO (PC)

12              Plaintiff,                     **ORDER GRANTING DEFENDANT
                                              CUSTER'S MOTION FOR SUMMARY**
13        v.                                   **JUDGMENT REGARDING EXHAUSTION
                                              OF ADMINISTRATIVE REMEDIES**
14   DIANA NAKASHYAN, et al.,
                                              (Doc. 43)
15              Defendants.

16

17        Plaintiff Derek Tate is proceeding pro se and *in forma pauperis* in this civil rights action

18   pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's First Amendment retaliation

19   claims against Defendants Custer and Nakashyan, Fourteenth Amendment substantive due

20   process claim against Defendant Custer, and Fifth Amendment equal protection claim against

21   Defendant Nakashyan.

22        **I.      BACKGROUND**

23        On December 1, 2023, the Court issued its Discovery and Scheduling Order. (Doc. 34.)

24   On February 9, 2024, Defendants filed a motion to modify the scheduling order, seeking an

25   extension of the exhaustion motion filing deadline. (Doc. 38.) On February 12, 2024, the Court

26   granted Defendants' motion and extended the deadline for the filing of an exhaustion motion

27   from March 1, 2024, to April 30, 2024. (Doc. 39.)

28

1    On April 8, 2024, Plaintiff filed a motion to modify the scheduling order, seeking an

2    extension of the deadline for the completion of all discovery. (Doc. 40.) On April 9, 2024, the

3    Court granted Plaintiff's motion and extended the discovery deadline to June 15, 2024, and the

4    dispositive motion filing deadline to August 15, 2024. (Doc. 41.)

5    On April 30, 2024, Defendant Custer timely filed a Motion for Summary Judgment for

6    Failure to Exhaust Administrative Remedies. (Doc. 43.) Plaintiff filed an opposition on May 22,

7    2024 (Doc. 45) and Defendants filed a reply on June 4, 2024 (Doc. 47).

8    **II.      LEGAL STANDARDS**

9    **A. Summary Judgment**

10   Summary judgment is appropriate when the moving party "shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

13   issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

14   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

15   "citing to particular parts of materials in the record, including depositions, documents,

16   electronically stored information, affidavits or declarations, stipulations …, admissions,

17   interrogatory answers, or other materials," or by showing that such materials "do not establish the

18   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

19   evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

20   the burden of proof at trial, "the moving party need only prove that there is an absence of

21   evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

22   477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

23   Summary judgment should be entered against a party who fails to make a showing

24   sufficient to establish the existence of an element essential to that party's case, and on which that

25   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

26   proof concerning an essential element of the nonmoving party's case necessarily renders all other

27   facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

28   "so long as whatever is before the district court demonstrates that the standard for the entry of

1   summary judgment … is satisfied." *Id.* at 323.

2   **B. Exhaustion of Administrative Remedies**

3       The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with

4   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

5   confined in any jail, prison, or other correctional facility until such administrative remedies as are

6   available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is

7   mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

8   211 (2007). Inmates are required to "complete the administrative review process in accordance

9   with the applicable procedural rules, including deadlines, as a precondition to bringing suit in

10  federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies

11  to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of

12  the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532

13  U.S. 731, 741 (2001).

14      The failure to exhaust administrative remedies is an affirmative defense, which the

15  defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of

16  producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if

17  the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff

18  failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

19      On a motion for summary judgment, the defendant must prove (1) the existence of an

20  available administrative remedy, and (2) that the plaintiff failed to exhaust that remedy. *Albino*,

21  747 F.3d at 1172 (citation omitted). If the defendant meets this burden, plaintiff then "has the

22  burden of production. That is, the burden shifts to the prisoner to come forward with evidence

23  showing that there is something in his particular case that made the existing and generally

24  available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

25  "However, … the ultimate burden of proof remains with the defendant." *Id.*

26      An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642

27  (2016). An administrative remedy is unavailable "when (despite what regulations or guidance

28  materials may promise) it operates as a simple dead end with officers unable or consistently

3

unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C.  CDCR Grievance Process

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Prior to June 2020, the grievance process involved three levels of review. Cal. Code Regs. tit. 15, §§ 3084-85. As of June 1, 2020, prisoners are required to follow a two level review procedure. Cal. Code Regs. tit. 15, §§ 3480-3487. Compliance with 42 U.S.C. § 1997e(a) requires California-state prisoners to utilize CDCR's grievance process to exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86.

### III.    PLAINTIFF'S RETALIATION CLAIM AGAINST DEFENDANT CUSTER

The Court screened Plaintiff's complaint in March 2023. The Court determined that Plaintiff stated cognizable First Amendment retaliation claims against Defendants Nakashyan and Custer, a Fourteenth Amendment substantive due process claim against Defendant Custer, and a Fifth Amendment Equal Protection claim against Defendant Nakashyan but failed to state any

other cognizable claim. (Doc. 17 at 10.) Plaintiff elected to proceed only on the claims found cognizable by the Court. (*See* Doc. 18.)

In its screening order, the Court summarized Plaintiff's factual assertions regarding the First Amendment retaliation claim involving Defendant Custer as follows:

> Plaintiff further alleges that on September 27, 2018, as "Chief Disciplinary Officer" of the Inter-Disciplinary Treatment Team, Defendant Custer heard the RVR "written by Sergeant C. Alvarez, after being authored by the Defendant Dr. Diana Nakashyan," and denied Plaintiff's request to call Nakashyan as an adverse witness. Plaintiff contends Custer asked Alvarez "questions intended for" Nakashyan. Custer asked Alvarez whether the RVR was issued in retaliation "for reporting the [PREA] violations; Alvarez replied "'no.'" Plaintiff contends both Defendants' conducts violated sections of the California Code of Regulations. Plaintiff states he appealed the guilty RVR finding and at the third level of review his appeal was granted, requiring "a re-issue, re-hearing." Plaintiff indicates the RVR was reduced to an administrative rules violation. Plaintiff also contends "the third level reviewer" rejected Defendant Custer's claim that Plaintiff never requested witnesses. Plaintiff was transferred to Los Angeles County State Prison on or about November 1, 2018.

(Doc. 17 at 4, internal citations omitted.) The Court then found that:

> Liberally construing the complaint, Plaintiff has plausibly asserted a retaliation claim against Custer. Plaintiff asserts Custer refused to allow him to call Nakashyan as a witness at his disciplinary hearing following issuance of an RVR, and instead called Alvarez so that Alvarez could deny any retaliatory motive associated with the filing of a PREA complaint (that complaint having been filed against Nakashyan). Because Plaintiff engaged in the protected activity of filing a PREA complaint against Nakashyan, and Custer allegedly interfered with Plaintiff's ability to call a witness directly associated with that complaint, Plaintiff's First Amendment rights were chilled in the absence of a legitimate correctional goal.

(Doc. 17 at 7.)

## IV.   SUMMARY OF THE PARTIES' POSITIONS

### *Defendant Custer's Summary Judgment Motion re Exhaustion (Doc. 43)*

Defendant Custer contends Plaintiff failed to exhaust his administrative remedies on his First Amendment retaliation claim against Custer. Custer asserts that while Plaintiff has used the administrative grievance process at other times, Plaintiff did not submit a grievance related to his retaliation claim against him, thereby entitling Custer to summary judgment.

Defendant Custer alleges Plaintiff submitted one grievance relevant to the allegations in his complaint: Log No. KVSP-19-00561. Defendant Custer asserts that between September 17, 2018—the date of the incident—and May 13, 2022, the date Plaintiff initiated this action, Plaintiff submitted more than 80 other grievances, but none were forwarded to Kern Valley State Prison (KVSP) for handling and review. Additionally, Plaintiff submitted 24 other appeals during that same period, but none involved Defendant Custer, or the incidents alleged to have occurred at KVSP.

### *Plaintiff's Opposition (Doc. 45)*

Plaintiff contends he submitted a grievance regarding his claim against Defendant Custer while he was housed at California State Prison, Los Angeles, citing "appeal Log no. LAC-D-19-00786; KVSP-0-19-00561" on January 27, 2019. Plaintiff alleges the processing of his grievance or appeal included "bizarre" actions meant to "vex and discourage" him. Plaintiff asserts that because such "gamesmanship would cause a prisoner of ordinary firmness to withdraw from the appeal process," his constitutional right was chilled from the beginning and Defendant Custer "is therefore estopped from complaining that the Plaintiff has failed to exhaust administrative remedies." Plaintiff asserts his administrative remedies were unavailable.

Plaintiff contends Defendant Custer's "misfeasance occurred on June 11, 2019 … not on September 17, 2018; during the rules violation report." Plaintiff asserts he "could not argue Defendants First Amendment claim until after the second level reviewer's decision on" of June 11, 2019, because Defendant Custer's "false testimony occurred on 6/11/2019; not 9/17/2018; nor 1/27/2019, when Plaintiff filed his appeal KVSP-19-00561."

Plaintiff contends that on July 5, 2019, while he was housed in the administrative segregation unit at California State Prison, Los Angeles County, he "filed a retaliation grievance with the second watch law library/property correctional officer Grant." He never received a response. Plaintiff asserts the administrative remedy was unavailable which he contends raises a genuine issue of material fact.

//

//

*Defendant Custer's Reply (Doc. 47)*

Defendant Custer contends that Plaintiff fails to establish he exhausted his administrative remedies prior to bringing suit and that Plaintiff is instead attempting to "assert new and different factual allegations for the basis of his retaliation claim other than what was screened by this Court." Custer states that Plaintiff's alleged retaliatory conduct "does not form the basis of any claim" in the action and is an unexhausted "non-existent claim." To the extent Plaintiff contends KVSP ignored his grievance asserting same, any such grievance involves "a different basis than that identified as cognizable by this Court" and does not exhaust the claim asserted against Custer in this action.

Defendant Custer states that the evidence shows Plaintiff only asserted a violation of his due process rights as to Custer's failure to call Nakashyan as a witness in September 2018, in grievance Log No. KVSP-19-00561; even if Plaintiff submitted a grievance alleging retaliation by Custer in June 2019, "the conduct … in the alleged grievance is not the challenged conduct underlying the First Amendment claim about Custer in this case."

## V.  DEFENDANT CUSTER'S STATEMENT OF UNDISPUTED FACTS

| No. | Undisputed Material Fact | Evidence | Plaintiff's Response |
|---|---|---|---|
| 1 | Plaintiff Derek Tate (P99822) is a pro se prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), who at all times relevant to the allegations in his complaint, was housed at Kern Valley State Prison (KVSP) in Delano, California. | ECF No. 1 | Admit. (Doc. 45 at 26) |
| 2 | Between September 17, 2018 (the date of the alleged events), through May 13, 2022 (the date Plaintiff filed this lawsuit), Plaintiff was housed at eight different institutions, including KVSP, North Kern State Prison (NKSP), California State Prison-Los Angeles County (CSP-LAC), California State Prison-Sacramento (CSP-SAC), California Health Care Facility (CHCF), California Medical Facility (CMF), and Mule Creek State Prison | Widman Decl., Ex. B | Admit. (Doc. 45 at 26) |

| | | | |
|---|---|---|---|
| | (MCSP). | | |
| 3 | CDCR has an administrative grievance process that is available to all inmates at KVSP and at every institution Plaintiff was housed prior to filing suit. This process was available to all inmates in 2018, when the alleged incident in this case occurred, and is currently available to all inmates. | Garcia Decl, ¶ 2; Contreras Decl, ¶ 2; Neis Decl., ¶ 2; Vasquez Decl., ¶ 2; Stout Decl., ¶ 2. | Deny. (Doc. 45 at 26) Plaintiff contends KVSP refused to process his grievances or appeals and that CDCR routinely fails to respond to grievances and appeals, effectively denying administrative remedies. |
| 4 | Prior to June 1, 2020, an inmate was required to follow the procedures set forth in California Code of Regulations, Title 15, sections 30843085. The administrative grievance process consisted of three levels of review, which the inmate initiated by submitting a CDCR Form 602 to the institution's grievance coordinator. First and second-level grievances were received and decided by the grievance office at the institution where the issue being grieved arose, while third-level grievances were received and decided by the Office of Appeals (OOA) located in Sacramento, California.  A final decision by the OOA generally exhausted an inmate grievance. | Moseley Decl., ¶ 6; Garcia Decl., ¶ 3; Johnson Decl., ¶ 3; Contreras Decl., ¶ 3; Neis Decl., ¶ 3; Vasquez Decl., ¶ 3. | Admit. (Doc. 45 at 27) |
| 5 | As of June 1, 2020, an inmate is required to follow the procedures set forth in CCR, Title 15, sections 3480-3487 (effective June 1, 2020).  The administrative grievance process changed to two levels of review—a review at the institution's Office of Grievances (OOG) and a review at the OOA in Sacramento.  Completion of the review process by OOA constitutes exhaustion of all administrative remedies available to an inmate. | Moseley Decl. ¶ 6; Garcia Decl. ¶ 4; Johnson Decl. ¶ 4; Contreras Decl. ¶ 4; Neis Decl. ¶ 4; Vasquez Decl. ¶ 4; Stout Decl. ¶ 2. | Admit. (Doc. 45 at 27) |
| 6 | Between September 17, 2018 (the date of the alleged incident), and May 13, 2022 (the date Plaintiff filed this lawsuit), Plaintiff submitted one grievance that is relevant to the allegations in his complaint: Grievance | Garcia Decl. ¶ 7-8; Neis Decl. ¶ 89; Moseley Decl. ¶ 8. | Deny. (Doc. 45 at 27) Plaintiff contends he submitted log no. KVSP-19-00561 on 1/27/2019, and a "retaliation appeal" on 7/5/2019 for which he received no response. |

| | | | |
|---|---|---|---|
| | | Log No. KVSP19-00561. | |
| 7 | In grievance log no. KVSP-19-00561, Plaintiff complained that the Senior Hearing Officer, Defendant Custer, violated Plaintiff's due process rights at a rules violation hearing on September 17, 2018, by denying Plaintiff's request to call the employee who submitted the rules violation report— Defendant Nakashyan—as a witness.  The grievance was screened and bypassed the first level of review. [Fn. Omitted.] On June 11, 2019, the second level review (SLR) denied Plaintiff's grievance. | Garcia Decl. ¶ 8, Ex. C; Moseley Decl. ¶ 8, Ex. 3. | Deny. (Doc. 45 at 27) Plaintiff contends Defendant Custer interfered with his rights, preventing him from "presenting a defense to the Rules Violation log no. 5482347; surrounding retaliation." Plaintiff asserts the second level reviewer denied his appeal on 6/11/2019 after Custer "again interfered" with his right to file grievances. |
| 8 | Plaintiff appealed the SLR decision to the OOA.  Appeal Log No. 1908137 (an appeal of Grievance Log No. KVSP-19-00561) was received by the OOA on July 9, 2019, and was granted in part on September 10, 2019. | Moseley Decl. ¶ 10, Ex. 3. | Admit. (Doc. 45 at 28.) Plaintiff notes the third level reviewer found Defendant Custer impermissibly interfered with Plaintiff's right to defense against the charges in the RVR that Plaintiff's "retaliation claim was denied by the Defendant J. Custer, on more than one instance." |
| 9 | Plaintiff submitted more than 80 other grievances between September 17, 2018 (the date of the alleged events) and May 13, 2022 (the date Plaintiff filed the complaint), but none of them were forwarded to KVSP for processing and review. | Garcia Decl. ¶ 9-11; Johnson Decl. ¶ 9; Contreras Decl. ¶ 8; Neis Decl. ¶ 10-20; Vasquez Decl. ¶ 8; Stout Decl. ¶ 8. | Objection. (Doc. 45 at 28) Plaintiff contends this fact is conclusory and outside the scope of these proceedings. He asserts it is ambiguous and he cannot adequately respond. |
| 10 | Plaintiff submitted 20 other appeals to the OOA during the time period described above, but none of them reference Defendant Custer or alleged incidents that occurred at KVSP. | Moseley Decl. ¶¶ 11-12. | Objection. (Doc. 45 at 28-29) Plaintiff contends this fact is conclusory and outside the scope of these proceedings. He asserts it is ambiguous and he cannot adequately respond. |

(Doc. 43-1.)

1    **VI.    DISCUSSION**

2       **A.  Procedural Background**

3              **Grievance Log No. KVSP-O-19-00561**

4       Plaintiff's grievance provides as follows:

5                  On January 18, 2019, C/O M. IM at CSP-Los Angeles County
                   delivered I/M Tate's Disciplinary Hearing Results. Log #5482347,
6                  disrespect w/potential for violence. I/M Tate requests a re-issue/re-
                   hearing in this matter. The Senior Hearing Officer Lieutenant J.
7                  Custer refused I/M Tate's witness, Dr. Diana Nakashyan. I/M Tate
                   has a right to question witnesses/adverse witnesses in this matter.
8                  (Title 15 section 3315(4)) … the reporting employee shall attend the
                   disciplinary hearing or be available for questioning via speakerphone
9                  if requested by the inmate. I/M Tate requested Dr. Nakashyan's
                   presence so that I/M Tate could show that the RVR was in retaliation
10                 for I/M Tate's filing a staff complaint Log # KVSP HC 18000843 on
                   or about July 22, 2018, for emailing I/M Jones. (Title 15 section
11                 3320(3)(L)) I/M may present documentary evidence in defense or
                   mitigation of charges. This due process right was denied I/M Tate on
12                 9-17-2018 at KVSP.

13    (Doc. 43-2 at 14, 16.) Following screening and bypass at the first level of review (*id*. at 14), on

14    June 11, 2019, Plaintiff's grievance was denied at the second level (*id*. at 24-26). Plaintiff

15    appealed the denial. (Doc. 43-5 at 24.)

16                  Appeal Log No. 1908137

17       In the Third Level Appeal Decision dated September 10, 2019, Plaintiff's appeal of the

18    second level response was granted in part:

19                 After considering the evidence and arguments presented to the Third
                   Level of Review (TLR), it has been determined that the RVR hearing
20                 process and documentation has presented sufficient information to
                   warrant a modification of the SLR. The Examiner notes the following
21                 circumstances of the offense: On August 14, 2018, the appellant
                   openly displayed disrespect and contempt for Dr. Nakashyan who
22                 wrote the incident up on a CDCR 128-B chrono. Dr. Nakashyan does
                   not have access to a digital signature via the Strategic Offender
23                 Management System (SOMS), so the RVR was submitted on behalf
                   of [] Dr. Nakashyan by Correctional Sergeant (Sgt.) C. Alvarez. A
24                 review of the RVR indicates the appellant wanted the RE [reporting
                   employee] as a witness at the hearing. At the hearing, Sgt. Alvarez
25                 was present as the RE. The appellant had two questions for the RE,
                   but Sgt. Alvarez could not answer questions adequately because Sgt.
26                 Alvarez was not a witness to the incident and had entered the RVR
                   into SOMS on behalf of the RE, Dr. Nakashyan. There is no mention
27                 in the record that an attempt was made to get Dr. Nakashyan to the
                   hearing or have the doctor available via speaker phone. The RE was
28                 granted as a witness, but the "proxy" RE was not in a position to

                                        10

1
2
3
4

answer the appellant's submitted questions resulting in a due process violation relative to witness handling. The TLR finds that the SHO [senior hearing officer]'s failure to call the RE as a witness in person or via speaker phone and failure to adequately address the reason for Dr. Nakashyan's absence from the hearing represents a due process error which requires ordering the RVR Reissue/Rehear.

5

(Doc. 43-5 at 21.)

6

**B.  Plaintiff Failed to Exhaust His Retaliation Claim Against Custer**

7

The Court finds Defendant Custer has met his initial burden of showing there is no

8

genuine issue of material of fact because there exists an available administrative remedy process

9

available to all inmates in CDCR and that Plaintiff failed to exhaust his administrative remedies

10

concerning the First Amendment retaliation claim asserted against Custer. (*See* UDF ¶¶ 3-8.) *See*

11

*In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino,* 747 F.3d at 1172. Defendant has shown

12

that an available administrative remedy process exists and that Log No. KVSP-19-00561 alleges

13

only that Custer violated Plaintiff's due process by denying Plaintiff's request to call Defendant

14

Nakashyan as a witness at a disciplinary proceeding. Thus, Defendant has met his initial burden

15

to show Plaintiff's First Amendment retaliation claim against Custer is not exhausted and is

16

subject to dismissal.  The burden shifts to Plaintiff "to come forward with evidence showing that

17

there is something in his particular case that made the existing and generally available

18

administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

19

The Court must determine whether Log No. KVSP-19-00561 serves to exhaust the

20

retaliation claim or whether Plaintiff submitted another grievance that exhausts that particular

21

claim.

22

1.      Log No. KVSP-19-00561 Does Not Address Retaliation

23

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the

24

problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only

25

provide the level of detail required by the prison's regulations." *Sapp v. Kimbrell*, 623 F.3d 813,

26

824 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 219). The grievance "need not include legal

27

terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison

28

to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin v. Arpaio*,

1    557 F.3d 1117, 1120 (9th Cir. 2009)).

2           As noted above, Log No. KVSP-19-00561 pertains to Plaintiff's allegation that Defendant

3    Custer violated his due process rights by refusing to call Dr. Nakashyan at the disciplinary

4    proceedings held September 17, 2018, and makes no mention of retaliation by *Custer*.

5           Plaintiff's statement explaining his dissatisfaction with the second level response to Log

6    No. KVSP-19-00561 provides as follows:

> I/M is totally dissatisfied with the SLR. I/M Tate's rules violation
> report at page 3 clearly requests the "RE" or reporting employee as a
> witness. When I/M Tate asked the senior hearing officer to have the
> RE/Dr. Nakashyan present, that request was denied, then the SHO
> called Sgt. Alvarez into the hearing, asking Sgt. Alvarez questions
> appropriate for Dr. Nakashyan who was the reporting employee of
> this rules violation. Sgt. C. Alvarez explains in the rules violation
> report that it is being written on behalf of Dr. Nakashyan, at
> circumstances of violation section. Sgt. C. Alvarez has no first hand
> knowledge of any of the events that led up to this event. Sgt. C.
> Alvarez did not observe of any of the actions described in the RVR.
> I/M Tate would have no reason to call Sgt. Alvarez as a witness in
> this matter. Dr. Nakashyan wrote this report. Dr. Nakashyan should
> have been called at the I/M request so that the truth of the matter
> could be arrived at. I/M Tate was denied this due process right. I/M
> Tate is entitled to an re-issue re-hearing in this matter w/out these
> violations.

16   (Doc. 43-5 at 24, 26 [dated & signed 7/1/2019].) In appealing the denial following second level

17   review, Plaintiff again makes no mention of retaliation by Custer. Thus, to the extent Plaintiff

18   contends he only learned of Custer's retaliation on June 11, 2019, when he received the second

19   level response, Plaintiff's appeal of the second level response is silent in that regard.

20          Plaintiff makes no mention of retaliation by Defendant Custer in his original grievance or

21   in his appeal to the second level response. Thus, the retaliation claim is unexhausted. *See, e.g.*,

22   *Cortinas v. Vasquez*, No. 1:19-cv-00367-JLT-SKO (PC), 2022 WL 16748864, at *12 (E.D. Cal.

23   Nov. 7, 2022) (finding excessive force grievance did not serve to exhaust administrative remedies

24   as to plaintiff's sexual assault claim because excessive force grievance made no mention of sexual

25   assault or misconduct).

26                  2.      There Is Insufficient Evidence of Another Grievance

27          Defendant Custer's motion is supported by the Declaration of P. Neis, the grievance

28   coordinator at CSP-LAC. (Doc. 43-7, ¶ 1.) Plaintiff was housed at CSP-LAC from October 16,

1    2018, until September 4, 2019, and from September 12, 2019, to October 10, 2019. (*Id.*, ¶ 7.)

2    During that period, Plaintiff submitted one grievance concerning events occurring at KVSP;

3    originally assigned Log No. LAC-19-00786, that grievance was screened and forwarded to KVSP

4    for processing as it concerned a rules violation report generated at KVSP. (*Id.*, ¶ 9.) LAC-19-

5    00786 thus became KVSP-19-00561. The 20 other grievances submitted by Plaintiff while he was

6    housed at CSP-LAC do not involve Custer or any events occurring at KVSP. (*Id.*, ¶¶ 10-18.)

7             Plaintiff contends he filed a "retaliation grievance" on July 5, 2019, while housed at CSP-

8    LAC, and gave that grievance to a correctional officer on second watch but never received a

9    response.  A remedy is available if it "capable of use for the accomplishment of a purpose" or "is

10   accessible or may be obtained." *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022) (quoting

11   *Ross*, 578 U.S. at 642).

12             3.    Plaintiff's Deposition Testimony Does Not Support His Claim of
                     Exhaustion

13            During his deposition, Plaintiff testified he "had no interactions with Defendant Custer"

14   other than during the disciplinary proceedings concerning the RVR. (Tate Depo., at 101.) He did

15   not discuss his grievances with Custer at the disciplinary hearing. (*Id.* at 102.)  Plaintiff later

16   testified he did speak with Custer about Defendant Nakashyan's "RVR and the retaliation in the

17   602s and the complaints" that he filed. (*Id.* at 104.) When asked how many grievances Plaintiff

18   filed concerning his allegations against Nakashyan, Plaintiff replied, "The only grievance that

19   they replied to was the one" and that he "filed three grievances with the appeals at Kern Valley.

20   Never got a response from any of them." (*Id.* at 105.) When asked about Defendant Custer and

21   whether he filed a grievance, Plaintiff stated he filed two grievances: "The first grievance I filed

22   was the due process grievance, and the second grievance that I filed was the fact that he was

23   dishonest during the appeal process. So I filed two grievances against them." (*Id.* at 106-107.)

24   Plaintiff testified that he only received a response to the grievance involving due process and he

25   "never heard anything" about the other grievance. (*Id.* at 107.) Plaintiff stated that when he did

26   not receive a response, he filed another grievance "after about six months," for a total of three

27   grievances. (*Id.*) When asked about the grievance to which he received a response, Plaintiff

28   testified that grievance "was a retaliation and the due process. The retaliation - - I talk about

13

1   retaliation in there, and I talk about the fact that he refused my witness in there." (*Id*.) Plaintiff

2   identified the log number for the "grievance about due process and retaliation against Custer" as

3   "K[V]SP1900561." (*Id*. at 108.) Plaintiff testified he "filed two 602s on retaliation" but he did not

4   have log numbers for those. (*Id*. at 108-109.) When asked why Custer retaliated against him,

5   Plaintiff testified Custer "retaliated against me by giving false information during the appeals

6   process. He wanted - - I guess, he wanted it to be over. And so when they asked him if I requested

7   Dr. Nakashyan as a witness, he said no" (*id*. at 109) and that Custer wanted Plaintiff "to lose that

8   appeal" (*id*. at 110). Plaintiff testified "it was sometime in 2019 - - I was in Ad Seg at the time I

9   got [the second level response] back, I'm pretty sure - - at Lancaster. And that's when I 602ed it."

10  (*Id*. at 112.) Plaintiff stated he "explained in the 602 that [Custer] gave false information during

11  the appeals process. That's what I explained." (*Id*. at 113-114.)

12          Plaintiff's deposition testimony does not support his assertion that he exhausted his

13  retaliation claim against Defendant Custer. Plaintiff did not allege any retaliatory behavior by

14  Custer--either in the initial complaint or in his appeal to the second level response.  Even

15  assuming Plaintiff had alleged retaliation against Custer as a part of his appeal following the

16  second level response, such assertions would not exhaust any retaliation claim against Custer.[1]

17  *See McClintock v. Cooper*, No. 2:18-cv-0560 JAM KJN P, 2022 WL 2818945, at *9 (E.D. Cal.

18  July 19, 2022) ("While plaintiff may have attempted to raise retaliation claims in his appeals of

19  the first and second level responses, the regulations required plaintiff to raise his retaliation

20  claims in his originally submitted grievance. … By failing to raise a retaliation claim in the

21  grievance originally submitted in MCSP-15-01803, plaintiff failed to comply with the applicable

22  procedural rules. Therefore, MCSP-15-01803 could not have exhausted any retaliation claims

23  raised in plaintiff's appeals from the first and second level decisions"); *Tate v. Andres*, No. 2:18-

24  cv-00822-KJM-AC, 2022 WL 1104016, at *7 (E.D. Cal. Apr. 13, 2022) ("Plaintiff's primary

25  argument is that he was prevented from utilizing the grievance process because he intended to

26
_____

27  [1]*See* Cal. Code Regs. tit. 15, § 3084.2(a)(4) (requiring inmate to "state all facts known and available to
    him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form");
    Cal. Code Regs. tit. 15, § 3084.1(b) (administrative remedies not exhausted as to "any new issue,

28  information, or person later named by the appellant that was not included in the originally submitted
    CDCR Form 602").

1   explain his retaliation claim during the mandatory interview for his grievance but was denied

2   when the second-level reviewer failed to interview him. … Plaintiff failed to raise the retaliation

3   issue until he appealed to the third level").

4         In sum, the First Amendment retaliation claim against Defendant Custer screened by this

5   Court does not include Custer's alleged dishonesty during the appeals process, and instead

6   pertains to Custer's conduct during the disciplinary proceedings. Therefore, even if Plaintiff

7   submitted a grievance while housed at CSP-LAC and after receiving the second level response,

8   such a grievance does not exhaust the First Amendment retaliation claim against Custer in this

9   action.

10            **4.**    <u>Plaintiff's Vague and Conclusory Allegations Are Insufficient to Create a Factual Dispute</u>

11         Vague and conclusory allegations are insufficient to create a genuine dispute of material

12   fact. *See Sapp*, 623 F.3d at 823-24 (plaintiff bears burden of demonstrating exception to

13   exhaustion requirement based on prison officials' misconduct thwarted attempts to exhaust

14   remedies); *Jeffries v. Fields*, No. CV 12-1351 R(JC), 2014 WL 994908, at *18 (C.D. Cal. March

15   10, 2014) (stating conclusory allegations obstruction and tampering are insufficient to

16   demonstrate that failure to exhaust was excused by prison officials' misconduct) (citing *Tubach v.*

17   *Lahimore*, 2012 WL 4490792, at *3 (E.D. Cal. Sept. 28, 2013) ["The vague assertion that

18   [plaintiff's] grievances were not processed and that Defendant was stopping them from being

19   processed is insufficient to make the requisite showing that exhaustion either occurred or was

20   excused due to ... conduct on the part of prison officials which rendered the appeals process

21   unavailable"]).

22         Plaintiff offers only his own self-serving statements that his "retaliation grievance" was

23   submitted in July 2019 but never responded to while he was housed at CSP-LAC. This is

24   insufficient to raise a genuine issue of material fact. *See Johnson v. Roesserr*, No. CV 18-10207-

25   VBF (KK), 2019 WL 3720096, at *6 (C.D. Cal. June 28, 2019) ("Plaintiff's conclusory

26   statements do not present 'evidence showing that there is something in his particular case that

27   made the existing and generally available administrative remedies effectively unavailable to

28   him"); *Jackson v. Baca*, No. CV12-10393-JLS JEM, 2018 WL 1916307, at *6 (C.D. Cal. Feb. 13,

2018) ("Plaintiff's assertions that he gave a deputy an inmate complaint form and then never heard anything again are simply too vague and inconclusive to create a genuine issue regarding exhaustion or the availability of administrative remedies"); *Crayton v. Hedgpeth*, No. C-08-00621 WHA (PR), 2011 WL 1988450, at *7 (E.D. Cal. May 18, 2011) ("The allegation that some grievances were lost or destroyed is not sufficient to support the inference that plaintiff's administrative remedies were wrongfully obstructed for all his claims, particularly where there is ample evidence that many of plaintiff's grievances were recorded and responded to through the director's level of review"); *Rodgers v. Reynaga*, No. CV 1-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule"). Moreover, as noted above, even assuming Plaintiff submitted a separate grievance while housed at CSP-LAC, such a grievance would not exhaust the retaliation claim asserted against Custer in this action because the claim screened by the Court did not involve Custer's alleged dishonesty at the second level of review.

Viewed in the light most favorable to Plaintiff, the record reveals Plaintiff failed to exhaust any First Amendment retaliation claim against Defendant Custer and has failed to set forth evidence showing his failure to exhaust administrative remedies concerning his retaliation claim against Defendant Custer should be excused. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Defendant Custer has met his ultimate burden to show Plaintiff failed to exhaust his administrative remedies regarding the First Amendment retaliation claim against Custer prior to filing suit. *Albino*, 747 F.3d at 1172. Therefore, Defendant Custer is entitled to summary judgment on that claim. *Celotex*, 477 U.S. at 322-33.

//

//

//

//

//

//

1

## VII.    CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant Custer's motion for summary judgment for a failure to exhaust administrative remedies (Doc. 43) is **GRANTED**. Plaintiff's First Amendment retaliation claim against Defendant Custer is **DISMISSED** without prejudice.

IT IS SO ORDERED.

Dated:   **November 13, 2024**                    /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE

17